Robert Dodson on behalf of Treasury Solutions. I'd like to, with the Court's permission, reserve two minutes for rebuttal. Thank you. May it please the Court, I represent appellant Treasury Solutions who seeks relief for an order dismissing its suit against Vanguard and Upromise with prejudice on statute of limitations grounds. Treasury Solutions brought a claim for tortious interference with contract based upon a contract that existed as of 2006 for which it had completely performed and for which it was owed consideration, compensation under that performance-based contract until 2031. This dismissal occurred despite the fact and without any reference to tolling agreements, tolling and standstill agreements which existed between Treasury Solutions and each of the defendants in the case. Treasury Solutions contends that the dismissal was inappropriate and error because of the tolling and standstill agreements and also because the claim had not accrued by the time or at the latest on the date that the complaint was filed, even notwithstanding. If the plaintiff would agree with your tolling, would you still have a problem in this case? If there was no tolling agreement, I believe the complaint was still timely filed. But there are tolling agreements, one for 120 days and one for 90 days. Let's take them separately. Your first argument was that there was, under the accrual rule, the statute had not yet run. That's true. And you have a separate argument on tolling. So why don't you first discuss your first argument that under the appropriate accrual rule, the statute had not run, and then move on in case you don't persuade the court with that to the argument that under the tolling principles, the statute had not run.  I will do just that. The claimant here in this case is tortious interference with contract. There is a statute of limitations that Nevada has adopted, and that is NRS 11.190. It states that there's a three-year statute of limitations for torts against property. The claim in this case, we believe, accrued when there has been an actual disruption of the contract. Now, there is an interfering amendment by U-Promise, the U-Promise Amendment No. 2, that was passed and considered and passed by the College Savings Plan Board on November 17, 2006. However, as the complaint alleges, and it attaches the amendment, that amendment does not become effective until it has been passed by that board, signed by the parties, and, most importantly to this case, reviewed and approved by the Board of Examiners. The Board of Examiners in the State of Nevada reviewed and approved that contract on December 28, 2006. Three years later, to the day this complaint was filed, on December 28, 2006. It is that date, the review and approval by the Board of Examiners, upon which any claim for tortious interference accrued at the earliest. We contend that the claim actually didn't accrue until my client did not receive the compensation it was owed, which occurred, its first compensation it missed was its January compensation, which normally it would receive in February of 2007. Now, to move to the tolling agreement, Your Honor, excuse me, the other thing that occurred on the 28th is that there was a letter that was sent to indicate that in the future, Treasury Solutions, the plan advisor, would not receive the fees it was owed, and that instead, those same fees would be paid to U-Promise under the offending amendment. Now, there were two tolling agreements that were entered. The first was entered between Treasury Solutions and U-Promise on November 17, 2008, and the second with Vanguard approximately a month later on December 18. The first was for 120 days, and the second was for 90 days. The U.S. Supreme Court has stated that the word tolling means that during the relevant statute, relevant period, the statutes of limitations ceases to run. We cite Desjardins for that. But frankly, Your Honor, or Your Honors, you need look no farther than Black's Law Dictionary, which states that to toll means to suspend and stop temporarily. Therefore, during the pendency of those tolling agreements, time did not pass with regard to the statute of limitations in this case. And therefore, although even without those tolling agreements, this complaint was timely filed, in light of those tolling agreements, there was at least three months left with regard to the claim against Vanguard and four months left with regard to the claim against U-Promise. Now, in its appeal, or rather in its dismissing the appeal from order, the Court also references, although determining that the dismissal shall be for statute of limitations ground, it also references a 12b-6 failure to state a claim basis. Would the Court like me to duress that as well? I assume. I think we're comfortable with you deciding what you think you need to tell us. Thank you, sir. I would like to refer to it. Because I believe that the – well, first, that the claim was timely filed under either theory. And I believe that the Court is unclear in its order as to whether it dismisses the case or would dismiss the case as to – for failure to state a claim as well. Unfortunately, this was not the first order of dismissal in this case. The Court had dismissed the case pursuant to that basis on December 22, 2010. Interestingly, in those motions, the motions that led us to that, U-Promise again raised or had also raised the statute of limitations basis. And it was not accepted by the Court in the first instance. But what the Court said in that order was, Treasury Solutions, you have inadequately pled all of the claims for tortious interference with contract. And in particular, it suggested that what was absent was an adequate pleading that there had indeed been a breach of contract. It also stated that the allegation of impropriety had not been adequately pled. We filed – we sought leave and obtained leave, filed our first amended complaint. Going back to statute of limitations for just one moment. By the way, below, Vanguard appropriately did not raise the issue of statute of limitations. It is only upon the sua sponte dismissal of the claim on statute of limitations basis that Vanguard has adopted the arguments of U-Promise. The claim for tortious interference with contract in Nevada is stated through the J.J. Industries Bennett case. And that's the case that the district court cited as well. And the first two elements of that are clearly met, the valley contract and the knowledge of the contract. The third element we believe also to have been met. And interestingly, in its 2010 order, the district court agreed with us and said that intentional acts intended or designed to harm the district and to disrupt the contractual relationship had been shown in that complaint. But, again, criticized that the allegations were not clear enough with regard to breach. In this instance, it's unclear if, first of all, the court is dismissing the claim on the 12b-6 basis and on what basis. However, it appears that it is based upon the allegation of impropriety. We believe that Treasury Solutions did adequately plead the issue of impropriety, but we believe that it was error for the district court to dismiss it on that basis because in Nevada, impropriety is not a required element of a claim for tortious interference with contract. Indeed, it's not listed as a basis in the J.J. Industries case. The federal cases that have addressed it have also not found it to be present. And this court in Nationwide Transport Finance, in footnote number two, notes that Nevada has not adopted the requirement of absence of privilege. Thus, to the extent that the district court below dismissed this claim on a 12b-6 basis, which is unclear, but assuming that that's the case, if it did so because of inadequately pleading impropriety, that was error. That's not required in Nevada. With regard to the adequacy of the pleadings that intentional acts were undertaken by Vanguard and U.Promise to tortiously interfere with the contract of my client, we believe that that has been adequately pled. Primarily, in the case of Vanguard, through an October 26th e-mail, which was attached and incorporated to the complaint. This is a page-long e-mail urging the then treasurer of the State of Nevada and the deputy treasurer in charge of the program to breach the contract that existed with Treasury Solutions, for which my client had fully performed and for which all my client had to do was receive compensation until 2031. The e-mail, frankly, frames the prima facie case of tortious interference with contract. It establishes that there's a contract. It urges the State to breach that contract, to close to – it doesn't use the term close out, but to discontinue that relationship. Let me ask you a question. The State notified you – or not the State, the – no. Did they notify you that they would not make future payments? There is a letter that is sent by the treasurer, not to my client, but my client receives, that is sent on December 28th that indicates, pursuant to U.Promise Amendment No. 2, the State will no longer be – will be paying the fees that had heretofore been paid to the plan advisor, which is what they called my client, the plan advisor, will be paid to U.Promise. And that's the act by way that U.Promise undertook that interfered with my client's contract. It drafted, negotiated – Now, is there any case as to whether that would or would not constitute notice of the injury or whether that would be enough to entitle you to sue? The letter on December 28th? I can't say that I can refer to a case that is similar in my mind, but the question becomes whether there's been an actual disruption of the contract. Well, isn't there such a thing as an anticipatory breach? Yes, there is, of course, Your Honor. Isn't that letter an anticipatory breach? Arguably it is, Your Honor. So if it is, isn't it notice? It would be if the court were to so determine. But that would still have the breach occurring on December 28th, 2006, which is exactly three years prior to when the complaint in this case was brought. So it would still be a timely complaint. Now, the contract that caused the – the contract amendment that caused the State to send that letter specifically called in paragraph 4 not only for my client's contract to be closed out in the upcoming approximately month, but it also, in paragraph 2 of that contract, called for the fees that my client was to receive to 2031 to be paid to U-Promise in the future without any additional consideration being offered from U-Promise. We contend that the only way that makes sense is if the funds to pay my client were to come from U-Promise. I'd like to reserve my remaining time if I could, Your Honors. Thank you. Thank you. May it please the Court, David Frederick, Lionel Sawyer, and Collins on behalf of the U-Promise Appellees. I'm going to speak for about 12 minutes, at which time I'll turn the podium over to Mr. Howard Cavett, who's representing the Vanguard Appellees in this appeal. Very quickly on the statute of limitations. The cruel does not require an actual breach. It only requires notice there is going to be a disruption of the contract. That occurred on November 17th, when the Board of Trustees, the State of Nevada entity that is responsible for this program, voted to close out the contract with Treasury Solutions. One of two possibilities. Either that closeout was going to be unilateral and a breach of contract, which is what Treasury Solutions now claims, or it was going to be mutually agreed upon, in which case there would be no claim. So if there was going to be a claim, that claim approved as of the notice that there would be a disruption in the contract. Now on the tolling agreements. What's the best case that it occurs when there's notice that there's going to be a breach? There are two cases cited in our brief, which is the elements of which, in each case, are notice of the termination of the contract. There's no Nevada authority on it, there's no Ninth Circuit authority on it that I'm aware of. But if you think about it, the question then becomes, Judge Ferris mentioned anticipatory repudiation. You don't have to wait until there's a breach to assert your claim. You can sue for anticipatory breach. And that's what gives rise to the logic behind the holding. No, just just just because you can sue doesn't mean that's when the statute starts running. In other words, is it a part of the claim in Nevada that the party has to sustain injury? There's no injury with just with the notice. On that anticipatory repudiation, there's no injury. That doesn't preclude from bringing an action to challenge that repudiation. It's not a matter of whether precludes it. It's a matter of when it when the when the statute starts running. So as you know, the claim is barred. It's not how soon you can bring it, but how late you can bring it. If you have an accrued claim, you have to have an accrued claim to bring an action. And that's why the accrual occurs when the repudiation occurs. You can't sue without an accrued claim. Now, very quickly on tolling agreements. This case is certainly rare, perhaps unique. A tolling agreement made on the last day of a two-year period from accrual. Tolls for 120 days, followed by a Nevada Supreme Court decision that recognizes a statute of limitations that is a year long. Now, counsel argues that because the statute of limitations is suspended, it's not running. Well, the problem is in this case, the newly adopted statute of limitations for three years is running. And it covers not only the tolling agreement, which was 120 days, but eight more months. The problem Treasury of Solutions has is it didn't file within that statute of limitations. It wants you to take a tolling agreement that was made a year older and for far different purposes and sort of stick that in between the second year and the third year and block out that 120 days as if it didn't exist. There's no reason either in logic or in precedent for doing that. You know, Mr. Fray, your problem may be when the last period, the time period, when you, when the parties knew and should have acted. And if you look at when they should have acted rather than when they could have acted, don't you get a different answer? I don't think so based on your recognition of anticipatory repudiation. I mean, I do not know of a doctrine that says once there has been an anticipatory repudiation, you should act later. You can't act now, but you should act later. Once that repudiation occurred, once they knew that contract was going to be disrupted, that's the accrual, that's the time at which they could file a lawsuit. And that's where the ultimately three-year statute of limitations began running. Let me talk briefly about this question of the 12b-6 dismissal. And I want to do that by focusing the court's attention on three factors in this case, which illustrate why, as demonstrated by the cases we've cited in the supplemental authorities letter we filed, it simply is not true to say, as Treasury Solutions tries to say, that every interference with a contract is wrongful per se, and there can be no privilege of justification for those kinds of interferences. First key circumstance. This is not a situation in which one party has a contract and one doesn't. This is a situation in which both parties had contracts with the state of Nevada over the same state program. And both of those parties had contracts that inherently required and obligated them to advise the state with respect to this program. So that when you promise, through the email that was drafted by Vanguard and from Vanguard's chief, suggested that the state conclude compensation arrangements with Treasury Solutions before the end of the year, they had every right to make that suggestion. Because they were the program manager. They were the ones responsible for the efficiency, the operation, and the competitiveness of this program. Second key situation. Keep in mind that we are dealing here with a sovereign decision maker. And what the case law teaches us in those circumstances is two very important consequences. The first one is, the scope of privilege expands dramatically. It doesn't matter whether you have a pre-existing relationship with the state. You can go to an administrative agency and you can urge them to rearrange their contractual arrangements to your benefit, to somebody else's disadvantage, and that's called, in constitutional terms, petitioning in the vernacular, lobbying. And there's not a case in this country, they haven't cited one and we didn't find one, that says urging that on a state agency sets you up for an interference with contract law. The second key conclusion from the fact that the state is the decision maker is causation. The cases from this court, cases from other courts say, as a judicial matter, we will not go back. And the words that the court uses is deconstruct the state's decision. And decide whether it was because of an email that came from Vanguard and got to the state by way of a promise, or whether it's the state's own conclusion. That it was in the best interest of the state's program to change the particular arrangements of the programs and how the compensation was calculated. That is a sovereign decision. It's made by the state. It's not subject for substantive re-examination, perhaps procedural, but not substantive re-examination by the courts. And the third key factor in this case. Well, just a minute. The state's not being sued here. And no one's trying to re-examine what the state did. The question is what your client did. Not in this action. Right? No, in this action, no. And we're only concerned with this action. Precisely right. But the question here is whether you promise and Vanguard are responsible in damages for urging the state to take the action that it took. I suggest you they're not. But in arguing against that, I mean, you can't raise the sovereign immunity of the state. It doesn't belong to you, it belongs to the state. Not as a legal doctrine. I think that's what you're trying to do. I don't think it's in this case at all. Not sovereign immunity in that sense. I should have simply referred to it as a governmental entity. Because of the case laws, they don't cite a sovereign immunity doctrine. And if I misled the court in that regard, I apologize. It's not sovereign immunity in that sense. But the point of it is, it is a governmental body. To which there is a petitioning right. And which is responsible for deciding what it can do. As well as what it should do. Mr. Frederick, I've listened to you and enjoyed listening to you. But I think you might want to get to one point. And I urge this, because it may pose a problem for you. A cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought. Is that an accurate statement of the law support you're considering? Levada's law? To my knowledge, I'll accept your word if that is a Levada court statement. You can look at a Levada case. Peterson, do you know it? I can't say I know that one, but I know the case law you're talking about. 792 Pacific 2nd, 1820, in Levada, 1980. And we are here looking at a dismissal, and we have to look at Levada law, don't we? To see whether it was appropriate or whether it was not. And if we start with the point I just made, you talk about statute of limitations in a way that you certainly can. But we have to look at the way Levada would look at it, don't we? My response to that line of argument is it depends upon... That's not argument, that's not argument. My day's of argument. Long face. Your argument based on precedent. My response to that is this. When the court talks about injury occurring in this circumstance, if that was literally true in every single case, you could never sue for anticipatory repudiation. Not literally true. True in Levada. Okay, literally true in Levada. My problem with that is the same problem I have with the interference cases, to be perfectly honest with you. You're right, you've got a problem with that. Your best answer is to tell us why that's not so. Why we shouldn't follow it. Levada Supreme Court has issued several anticipatory repudiation decisions. My point is simply this. Like a lot of the language in the interference cases, it may be true in that case. It may be true in many cases. But if it was true in every single case, you couldn't have a claim for anticipatory repudiation. That's just the reality. When you were dismissed, and in this case dismissed on the police, isn't that so? Yes, it was. Let me turn the podium over to my counsel for defending. 29 seconds. Howard Cabot. Good morning, Your Honor. My name is Howard Cabot, as I've been introduced before, and I'm here on behalf of the Vanguard Group. I will and must be brief, given the amount of time that I have. What I'd like to do in this short period of time, however, is to focus on the point that we maintained before Judge Reed, as well as the points set forth in our briefs, and what we believe today. We think that the key issue in the case, quite frankly, at least from Vanguard's perspective, is the failure of the plaintiff to plead causation facts under the doctrine of Twombly and Iqbal. And we know from comments that we've heard already from Treasury Solutions Counsel, and the arguments we've heard from Mr. Frederick, that indeed the sole act, really, that is bringing Vanguard into this case is this e-mail that we've heard talk about on October 26th. And you'll recall that that's the e-mail, and I've heard the characterization of the e-mail, but the words of the e-mail speak for themselves, Your Honors. And in that e-mail, Vanguard expressed the view that the State should conclude compensation arrangements. There's nothing improper about offering that view, and in fact, when we look at the plaintiff's pleadings, and in connection also with the plaintiff's briefs filed in this appeal, they admit that the closeout itself would not have been a breach of contract. We can turn to the First Amendment complaint that was just referred to earlier, where the plaintiff specifically alleged that the Second Amendment required the plan advisor agreement between Nevada and the plaintiff to be, quote, closed out. That was a requirement. It wasn't a problem with it, which would necessitate a mutual consent or termination. That comes from the First Amendment complaint. We then see the opening brief by Treasury Solutions, where they go on to further state that such a mutual closeout cannot be a breach of contract. So we know at the outset that the October 26th e-mail, giving rise, if you want to assume that, to a closeout arrangement was not a breach in the words of the plaintiff itself, even assuming, Your Honors, that that's not the case. I'd suggest under Iqbal and Twombly that there are simply no factual allegations in this case that connect the e-mail itself over time to the actual breach, regardless of when you want to look at which – Well, just a minute. You have to explain to me, since you say the closeout is not a breach,  the breach that I believe that's alleged, Your Honor, would be the State's refusal to pay Treasury Solutions the amount of money it believed it was entitled to under its contract. Is that different than the closeout? Well, it would be different than the closeout only, Your Honor, to the extent that it was understood according to Treasury Solutions' view of the world that the Second Amendment, which properly directed itself towards a closeout, was basically an appropriate agreement to negotiate. I mean, that's how they, I believe, suggest to Judge Reed and they suggest to you that the entering of that agreement was not by itself any kind of a breach. So I think when you look at what they're determining to be the breach, and we're hearing it today, it's either the letter that was sent by the Treasurer at that point in time, Mr. Krolicki, not to pay Treasury Solutions, or it would have been the actual nonpayment by the new Treasurer in January of 2007. In either case, there are no facts at all that connect Vanguard with the decision by the Treasurer, then, Mr. Krolicki, to send that letter that they're claiming was the time of actual disruption at the end of December, or at the time of the new Treasurer's, I gather, decision not to pay in January of 2007. It's notable, Your Honors, that the e-mail that we're talking to here about only went to Mr. Krolicki and his deputy. There are five members of the Board of Trustees. Mr. Krolicki is on that. There's no evidence that the other four members ever saw that e-mail, let alone relied upon it. There are three members of the Board of Examiners that have to approve the Second Amendment. There is nothing in the complaint at all that suggests that any of those three members saw, let alone rely on this e-mail. And when we get to the new Treasurer, there's no evidence at all in the record that the new Treasurer even knew about the existence of that e-mail. It's for those reasons that I believe we see Judge Reed saying, look, I gave you a chance once. I gave you now a second chance, and you haven't established, quite apart from statute of limitations, you haven't established on the causation. According to the restatement factors, factors four and five, you haven't established connection between the acts, in my case, of Vanguard and the actual cause of the breach or the proximate cause of the breach, which are requirements. We're not talking about conclusions of law here. We're talking about predicate facts that will get us to a plausible claim, Your Honors, not possibility, not probability, plausible. And it was that absence that led to this ruling, so far as you're concerned. Well, Your Honor, with all deference to Mr. Frederick, I incorporate all of his arguments. But from our perspective, judges, this is a case where the plaintiff's claim fails under Iqbal and Twombly because there was not a pleading of necessary facts on those issues of causation I mentioned earlier. That is where I think I'm headed. That's where we were before Judge Reed. That's where we are today, and it is true, Your Honor. If, in fact, the court is persuaded, and I've heard the arguments today on the statute of limitations and why the tolling agreements don't save it, then we think the court, in accordance with Ninth Circuit precedent, certainly has the ability to apply that ruling to Vanguard. But you ask me a question, and that's the answer I'm giving. And at this point in time, unless the court has any other questions, I'm happy to address this improper motivation. You've given me more than enough. You've given me more than enough. Thank you very much, Your Honors. Thank you. Your Honors, in rebuttal, I want to first state that the Nevada law does require an actual disruption. And in this case, even if anticipatory breach was enough, the letter of December 28, 2006, would be that anticipatory breach. And so the claim is timely regardless, and even if there were no tolling agreements, which there are, and those tolling agreements are very specific. Counsel refers to a change in the statute of limitations. There was no change in the statute. What happened was that the Nevada Supreme Court decided a case that the statute of limitations was three years and not four, as was being argued. There was no one-year statute that was being ‑‑ there is no one-year statute in Nevada. It's two years. Also, privilege or justification, as you promise argues, is an affirmative defense. This case was dismissed on the pleadings. This is a motion to dismiss. If there is going to be ‑‑ and, frankly, the arguments from Vanguard are a great closing argument to a jury. But in this case, my client's claim was dismissed before they had the opportunity to do even discovery, Your Honor. Well, but Vanguard's argument is, I think, you didn't adequately plead causation. I assume he's referring to that FERCO e-mail, right? That's what you depend on. Well, that is one of the things. That is the ‑‑ you know what's unique about that, Your Honor? In tortious interference with contract cases, you have to ‑‑ it's usually pretty vague and fussy. Very rarely does somebody put it all in an e-mail that is that detailed and that long. But that's not the only allegation against Vanguard. The other thing that Vanguard did, and is so critical here, is that it changed the fees that it was charging to thousands of participants in the 529 before the December 28th adoption of You Promise Amendment No. 2. In other words, there was incredible pressure exerted by Vanguard, which is the flagship program from Nevada and very lucrative, because they had changed the fees that they were collecting before the amendment was even adopted by the Board of Examiners. What does that mean, then? Your allegation amounts to what, that Vanguard's changing the fees was a breach of contract because it wasn't authorized yet? It was a tortious interference with the contract because it put Nevada, who is the fiduciary under 529, for these precipitant participants in a very unique position. Nevada is in a position where the funds have not been collected and should have been collected for December. And to rectify that, they have to adopt You Promise Amendment No. 2. And that's an action that Vanguard undertook unilaterally and interfered with my client's contract because the state had a hopeless choice. They either were going to be in violation of the contract with my client and breach my client, or they're going to be in a circumstance where fees were not appropriately collected. The Court has nothing further I might add. Thank you, counsel. Thank you. The case this year will be submitted.
judges: Farris, Reinhardt, Tashima